IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELLAN MILLER,

        Petitioner,

v.                                **Civil Action No. 1:16CV122**
                                **Criminal Action No. 1:14CR86**
                                     **(Judge Keeley)**

UNITED STATES OF AMERICA,

        Respondent.

## MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION [DKT. NO. 1][1] AND DISMISSING CASE WITH PREJUDICE

Pending before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by the pro se petitioner, Ellan Miller ("Miller"). For the reasons that follow, the Court **DENIES** the § 2255 motion (Dkt. No. 1), and **DISMISSES** this case **WITH PREJUDICE**.

### I. BACKGROUND

On January 21, 2015, Miller pleaded guilty before former United States Magistrate Judge John S. Kaull to one count of possession of pseudoephedrine to be used in the manufacturing of methamphetamine, in violation of 21 U.S.C. § 841(c)(2) (Case No. 1:14CR86, Dkt. No. 92). On June 17, 2015, the Court sentenced Miller to 41 months of imprisonment, the lowest end of the

---

[1]
 All docket numbers, unless otherwise noted, refer to Civil Action No. 1:16CV122.

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

applicable guideline range, followed by 3 years of supervised release (Case No. 1:14CR86, Dkt. No. 158). Miller did not directly appeal her conviction or sentence.

On June 20, 2016, Miller timely filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence based on the ineffective assistance of her counsel, the involuntary nature of her guilty plea, and the "[r]etroactivity of laws to be applied" to her sentence. In its response, the government argues that Miller has failed to satisfy the two-pronged analysis provided by Strickland v. Washington, 466 U.S. 668, 687 (1984), to establish ineffective assistance of counsel. It further argues that the Court did not err in finding Miller's guilty plea to be knowing and voluntary, and that Miller is not entitled to relief based upon the purported retroactivity of any applicable sentencing guideline or case law. Id. at 6-10. In her reply, Miller reiterates her contentions about the involuntary nature of her guilty plea and her attorney's constitutionally deficient performance.

## II. STANDARDS OF REVIEW

### A.    Pro Se Pleadings

The Court must liberally construe pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291,

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

1295 (4th Cir. 1978). A pro se petition is subject to dismissal,
however, if the Court cannot reasonably read the pleadings to state
a valid claim on which the petitioner could prevail. Barnett v.
Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not
construct the petitioner's legal arguments for him, nor should it
"conjure up questions never squarely presented." Beaudett v. City
of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.    § 2255 Motions**

Title 28 U.S.C. § 2255(a) permits federal prisoners, who are
in custody, to assert the right to be released if "the sentence was
imposed in violation of the Constitution or laws of the United
States," if "the court was without jurisdiction to impose such
sentence," or if "the sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral attack."
A petitioner bears the burden of proving any of these grounds by a
preponderance of the evidence. See Miller v. United States, 261
F.2d 546, 547 (4th Cir. 1958).

### III. DISCUSSION

**A.    Ineffective Assistance of Counsel**

Miller first asserts that her counsel was ineffective due to
a "lacking" defense and "lack of explanation [sic]" (Dkt. No. 6 at

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

5). She further claims her attorney was ineffective because he
failed to file an appeal on her behalf. Id. In response, the
government argues that Miller has not met her burden of proof under
the standard set forth in Strickland v. Washington, 466 U.S. 668,
692 (1984), as to her "lack" of defense and "lack of explanation"
claims (Dkt. No. 14 at 3-5). It further argues that Miller has not
alleged facts sufficient to support a claim of ineffective
assistance of counsel based on her attorney's alleged failure to
file an appeal. Id. at 5.

1.     **Applicable Law**

The Sixth Amendment to the United States Constitution
guarantees criminal defendants the right to effective assistance of
counsel during their criminal proceedings. The Court's review of
Miller's ineffective assistance of counsel claim is guided by the
conjunctive, two-prong analysis outlined in Strickland:

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> . . . has two components. First, the defendant must show
> that counsel's performance was deficient. This requires
> showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were
> so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

466 U.S. at 687.

In order to satisfy <u>Strickland</u>'s deficiency prong, a petitioner must demonstrate the objective unreasonableness of his attorney's performance. <u>Id.</u> at 688. Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. Thus, a reviewing court having the benefit of hindsight must not second-guess those decisions of counsel which, given the totality of the circumstances at the time of trial, "might be considered sound trial strategy." <u>Id.</u> (quoting <u>Michel v. State of La.</u>, 350 U.S. 91, 101 (1955)). The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" when evaluating whether counsel's performance was ineffective. <u>Id.</u> at 689.

In order to satisfy <u>Strickland</u>'s prejudicial effect prong, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. A petitioner who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: he "must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988), <u>cert. denied</u>, 488 U.S. 843 (1988).

Further, <u>Strickland</u> makes clear that either prong of its test for ineffective assistance of counsel may be analyzed first, and thus, if no prejudice is shown by a petitioner, a court need not analyze counsel's performance. <u>Id.</u> at 697; <u>Fields v. Att'y Gen. of Maryland</u>, 956 F.2d 1290, 1297 (4th Cir. 1992), <u>cert. denied</u>, 506 U.S. 885 (1992).

### 2. "Lacking" Defense and "Lack of Explanation"

Following a careful review of Miller's motion and the record before it, the Court concludes that Miller has failed to satisfy her burden under <u>Strickland</u> to support a claim of ineffective assistance of counsel based on an alleged "lack" of defense or "lack of explanation" (Dkt. No. 6 at 5). Despite Miller's general contention that she "was not defended at all" by her counsel, she fails to point to any objective evidence of prejudice in support of her claim (Dkt. No. 16 at 1).

On January 21, 2015, Miller, with her counsel, appeared for a change of plea hearing before Magistrate Judge Kaull. During that

hearing, Miller testified under oath about the representation provided by her attorney. At no point during the lengthy plea colloquy did Miller express anything but satisfaction with that representation. To the contrary, Miller testified that she was "completely satisfied" with the representation of her counsel at the time she entered her guilty plea:

> THE COURT: Are you completely satisfied with the legal assistance, counseling, advice and actions that [your attorney] has provided to you in his representation?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything [your attorney] should have done and did not do?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Is there anything [your attorney] did do that you believe he should not have done?
>
> THE DEFENDANT: No, sir.
>
> ***
>
> THE COURT: Do you know of any ineffective assistance of counsel as you sit here today?
>
> THE DEFENDANT: No, sir.

Dkt. No. 15-2 at 29, 46.[2]

Miller further testified that she had met or otherwise spoken

---

[2] During her sentencing hearing several months later, Miller stated under oath that she remained unaware of any claims of ineffective assistance of counsel (Dkt. No. 15-3 at 25).

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

with her attorney "several times," that he had answered all questions to her satisfaction, and that together they had reviewed the evidence in the case. Id. at 24. Miller also testified that she and her attorney had considered possible defenses to the charges in the indictment and had "discussed all options." Id. at 24. When Magistrate Judge Kaull asked why she was not using any defense, Miller responded, "Because I'm guilty." Id.

Thus, neither Miller's motion nor the record in the case reveals any objective evidence showing a reasonable probability that, but for her attorney's generally alleged deficiency, "[s]he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Because the vague, self-serving statements set forth in Miller's motion directly contradict her sworn statements at her plea hearing, the Court concludes that Miller has failed to establish, by a preponderance of the evidence, her claims of ineffective assistance of counsel based on an alleged "lack" of defense or "lack of explanation."

### 3.   Failure to File Appeal

Under Strickland, a defendant who claims ineffective assistance of counsel must prove "that counsel's representation fell below an objective standard of reasonableness," and that any

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

such deficiency was "prejudicial to the defense," 466 U.S. at 687-88, 692. "[P]rejudice is presumed" in "certain Sixth Amendment contexts," id. at 692, such as "when counsel's constitutionally deficient performance deprives a defendant of an appeal that [s]he otherwise would have taken," Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000).

Recently, the Supreme Court of the United States held that the presumption of prejudice recognized in Flores-Ortega applies regardless of whether a defendant has signed a waiver of appellate rights. Garza v. Idaho, 139 S. Ct. 738, 747 (2019). Applying Flores-Ortega, the Court held that, despite the appellate waiver contained in the defendant's plea agreement, his attorney had rendered deficient performance by not filing a notice of appeal in light of the defendant's clear requests. Accordingly, where "an attorney performs deficiently in failing to file a notice of appeal *despite the defendant's express instructions*, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" Id. at 750 (quoting Flores-Ortega, 528 U.S. at 484) (emphasis added). Thus, the specific error addressed by Garza relates to an attorney's refusal to file an appeal after the defendant directed him to do so, regardless of waiver.

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

Here, Miller's cursory and unsupported allegation about the "lack of appeal" in her case is insufficient to make out a successful ineffective assistance of counsel claim based on her attorney's alleged failure to file an appeal (Dkt. No. 6 at 6). Critical to this analysis, Miller neither asserts in her motion nor provides any evidence that she wished to file an appeal or that she asked her attorney to file an appeal and he refused. Miller has therefore failed to allege any facts or put forth any evidence to support a claim that her attorney deprived her of an appeal that she otherwise would have taken. Cf. Garza, 139 S. Ct. at 747 ("when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal, with no need for a 'further showing' of his claims' merit . . . .") (quotation marks and citation omitted).[3] Accordingly, the Court concludes that Miller has failed to establish, by a preponderance of the evidence,

---

[3] To the extent that Miller alleges for the first time in her reply brief that her attorney further "failed to discuss or inform of any appeal rights," this claim is both waived by her failure to raise it in her motion and directly contradicted by her own sworn statements during the plea hearing, which are presumed to be true. See Dkt. No. 15-2 at 8-9; 44-46.

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

her claim of ineffective assistance of counsel based on a "lack of appeal."

### B.   Involuntary Plea

Next, Miller claims that her guilty plea was involuntary because she was on "heavy medications" during the Rule 11 hearing and, therefore, "her cognizance was compromised" at the time she entered her plea (Dkt. No. 6 at 6). Citing the Magistrate Judge's extensive inquiry into Miller's mental state during the plea hearing, the government argues that the Court did not err in finding Miller to be competent and capable of entering an informed plea and her plea of guilty to be knowingly and voluntarily made (Dkt. No. 14 at 6-8).

### 1.   Applicable Law

Before a court may accept a guilty plea, it must ensure that the defendant is competent and that the defendant's decision to plead guilty is a knowing and voluntary one. Godinez v. Moran, 509 U.S. 389, 398-401 (1993). The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." Id. at 401 n.12 (citing Drope v. Missouri, 420 U.S. 162, 171 (1975)). "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine

11

### MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
### [DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE

whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." Id. (citing Faretta v. California, 422 U.S. 806, 835 (1975)). "Common sense, backed by ample case law, suggests that medication can in some circumstances affect a defendant's mental state to a degree that undermines the defendant's ability to enter a voluntary plea." United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000).

In order to succeed on a claim that a guilty plea was involuntary due to the influence of medication, a petitioner must demonstrate that his "mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." United States v. Truglio, 493 F.2d 574, 578 (4th Cir. 1974) (quotation marks and citation omitted). Thus, "[t]he critical question is whether the drugs—-if they have a capacity to impair the defendant's ability to plead—-have in fact done so on this occasion." Savinon-Acosta, 232 F.3d at 268 (citing Miranda-Gonzalez v. United States, 181 F.3d 164, 166 (1st Cir. 1999)).

Of course, the plea colloquy required by Rule 11 must be

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

conducted with some flexibility, and "if a defendant's response to a court's question indicates the need for clarification, follow-up questions must be asked." United States v. Damon, 191 F.3d 561, 565 (4th Cir. 1999). Rule 11 therefore "counsels a district court to make further inquiry into a defendant's competence to enter a guilty plea once [it] has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." Id. at 564 (quoting United States v. Cole, 813 F.2d 43, 46 (3d Cir. 1987)).

In particular, the court must consider "objective data" about the nature and effect of the medication the defendant had taken and evaluate whether such medication "had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea." Id. at 565 (citing Truglio, 493 F.2d at 578) (recognizing that not all medication will influence a defendant's mental state to the point that the guilty plea must be invalidated); Savinon-Acosta, 232 F.3d at 268 (upon learning a defendant has recently taken medication, the court should conduct an inquiry "to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, and (so far as

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

possible) the purpose and consequences of the drugs in question").

   **2.   Analysis**

   Here, Miller has failed to meet her burden. During the plea
hearing, Magistrate Judge Kaull questioned Miller extensively about
the influence of her prescribed medications on her mental state.
Following that probing inquiry, Magistrate Judge Kaull found that
Miller was competent and capable of entering an informed plea and
that her guilty plea was knowingly and intelligently made (Dkt. No.
15-2 at 55-56). The Court concludes that the record before it
supports that finding.

   At Miller's change of plea hearing on January 21, 2015,
Magistrate Judge Kaull asked her about her ability to understand
the proceedings. Miller testified under oath that she was "able to
concentrate on what [wa]s going on around [her]," and that she had
understood what Magistrate Judge Kaull had "asked or said to [her]
up to th[at] point" in the hearing (Dkt. No. 15-2 at 11).
Magistrate Judge Kaull then asked Miller whether she had been
treated for any psychological problems in the six months prior to
the hearing. In response, Miller testified that she was being
treated for major depressive disorder. Id. at 12. When Magistrate
Judge Kaull asked Miller to describe the treatment she receives for

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

her depression, she testified that she was taking "prescription medication and . . . receiv[ing] talk therapy treatment. Id. at 13.

Next, Magistrate Judge Kaull inquired what medications Miller was currently taking. In response, Miller acknowledged that she was currently prescribed, among other things,[4] Cymbalta, Abilify, and Tegretol for her depression, and Oxycodone for pain (Dkt. No. 15-2 at 15-16). Once on notice that Miller had been taking several antidepressants and an opioid pain reliever, Magistrate Judge Kaull conducted an extended colloquy to ascertain Miller's reasons for taking the medications, id. at 12-16, and the effects of the medications on her mental faculties:

> THE COURT: Are any of the ailments you have just told me about over the last ten minutes in any way, whether in combination with each other or any single one of them, affecting your ability to hear, understand and respond to my questions?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: To talk with your lawyer about your case?

---

[4]

Miller's attorney stated that Miller's list of medications also included several allergy medications (including Singulair, Zyrtec, Nasonex, Claritin, Phenergan, and EpiPen), as well as Valium and Xanax for her panic disorder, Prilosec and Lolitol for her stomach and esophageal problems, Atrovent and Albuterol inhalers for her COPD, Neurontin for her sciatic nerve pain, and Lotrimin, an antifungal.

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

THE DEFENDANT: No, sir.

THE COURT: To make your own decisions about your case?

THE DEFENDANT: No, sir.

THE COURT: Are any of the medicines that you are prescribed to take or take, as you sit here today, in any way affecting your ability to hear, understand and respond to my questions?

THE DEFENDANT: No, sir.

THE COURT: Talk with [your attorney] about your case?

THE DEFENDANT: No, sir.

THE COURT: Make your own decisions about your case?

THE DEFENDANT: No, sir.

THE COURT: Are any of the medicines, in combination with the conditions, in any way affecting your ability to hear, understand and respond to my questions, talk with [your attorney] about your case or make your own decisions about your case?

THE DEFENDANT: No, sir.

THE COURT: As you sit here today are you suffering with the effects of major depressive disorder to the point where you cannot answer my questions, talk with [your attorney] about your case or make your own decisions about your case?

THE DEFENDANT: No, sir.

THE COURT: As you sit here today are you suffering with panic attacks to the extent that you're unable to answer the Court's questions, talk with [your attorney] about your case or make your own decisions about your case?

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

THE DEFENDANT: No, sir.

THE COURT: As you sit here today is your chronic COPD, your allergies, your GERD or your degenerative disc disease in any way affecting your ability to hear, understand and respond to my questions, talk with [your attorney] about your case or make your own decisions about your case?

THE DEFENDANT: No, sir.

Id. at 17-18.

Magistrate Judge Kaull next inquired as to whether Miller had been treated for addiction to controlled substances within the last sixty days. Id. at 18. When Miller testified that she was receiving substance abuse treatment due to her use of cocaine and marijuana, id. at 19, Magistrate Judge Kaull engaged her in a similar series of follow-up questions about her substance use and treatment:

THE COURT: What kind of treatment are you receiving for treatment of an addiction to narcotic drugs such as cocaine and/or marijuana?

THE DEFENDANT: I just started up at the Summit Center.

THE COURT: Is that counseling?

THE DEFENDANT: Yes, it's counseling and mood therapy . . . .

THE COURT: You're not receiving a drug substitute like Suboxone or any of that?

THE DEFENDANT: No, sir.

THE COURT: As you sit here today is your addiction to marijuana and cocaine in any way affecting your ability to

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

___

hear, understand and respond to my questions, talk with [your
attorney] about your case or make your own decisions about
your case?

THE DEFENDANT: No, sir.

Id.

Finally, Magistrate Judge Kaull questioned Miller about the
frequency with which Miller takes her prescribed medications and
the recency of her use:

THE COURT: In the last twenty-four hours have you taken
any cocaine?

THE DEFENDANT: No, sir.

THE COURT: In the last twenty-four hours have you taken
any marijuana?

THE DEFENDANT: No, sir.

THE COURT: In the last twenty-four hours have you taken
any illegal drug?

THE DEFENDANT: No, sir.

THE COURT: In the last twenty-four hours, have you taken
the prescription medications that you've told me about?

THE DEFENDANT: Yes, sir.

The Court: None of them have the effect of making you
unable to concentrate, to respond to the Court's
questions, to talk with [your attorney] or make your own
decisions. Is that your testimony?

THE DEFENDANT: Yes, sir, it is.

THE COURT: In the last twenty-four hours have you taken

> any prescription medicine other than those that you've
> told me about?
>
> THE DEFENDANT: No, sir, I have not.
>
> THE COURT: In the last twenty-four hours have you taken
> any prescription medicine that somebody else is
> prescribed and gave to you?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: In the last twenty-four hours did you only
> take your prescription medications as directed by the
> pharmacist and the doctor who prescribed them for you?
>
> THE DEFENDANT: Yes, sir.

Id. at 20-21. Miller then confirmed that she did not have any other

physical, emotional, psychological or psychiatric condition which

was "in any way affecting [her] ability to hear, understand and

respond to [the Court's] questions, talk with [her attorney] about

[her] case, or make [her] own decisions." Id. at 21.

Further, when Magistrate Judge Kaull later questioned whether

Miller's attention was "drifting," she stated that she was "just

not feeling very well today." Id. at 36. Magistrate Judge Kaull

then asked Miller whether the fact that she was not feeling well

was affecting her ability to answer his questions, her ability to

hear his questions, or her judgment in deciding whether or not to

plead guilty. Id. at 36-37. Miller testified under oath that it was

not. Id. Finally, just prior to entry of Miller's guilty plea,

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

Magistrate Judge made a final inquiry about her present mental state and the impact of her mental and psychological health conditions:

> THE COURT: Have any of your ailments or your recent release from the hospital or your not feeling well today in any way impacted any single answer to any question you have been asked?

> THE DEFENDANT: No, Your Honor.

Miller then admitted her guilt to one count of possession of pseudoephedrine to be used in the manufacturing of methamphetamine. Id. at 55.

Notably, despite having taken her prescribed medications, Miller further testified that she understood the purpose of the hearing, that she understood all of the terms and provisions of the plea agreement, and that it was her idea to sign the plea agreement and her idea to plead guilty. Id. at 9; 31-32; 37. In addition, she testified that no one had threatened her or attempted to force her to plead guilty, and that it was her own free, voluntary, knowing, and intelligent decision to plead guilty. Id. at 37. Miller also testified that she understood her right to not plead guilty and to proceed to a jury trial. Id. at 47-49. Throughout the hearing, Miller answered Magistrate Judge Kaull's inquiries appropriately, sometimes answering "yes," sometimes answering "no," and sometimes

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

providing additional, relevant detail.

Thus, following a careful review of the record, the Court concludes that Magistrate Judge Kaull not only conducted the requisite inquiry regarding the influence of medication on Miller's mental state but also took great pains to ensure that Miller entered her plea knowingly and voluntarily. No less than eleven (11) pages of the plea transcript are devoted to the magistrate judge's searching inquiry into Miller's mental state and whether her prescribed medications had in fact impaired her ability to plead. <u>See</u> Dkt. No. 15-2 at 11-21; <u>see also</u> <u>id.</u> at 36-37; 51. Far from reflecting a patent lack of lucidity, Miller's responses during the hearing indicate that she was competent and capable of entering an informed plea. Accordingly, Miller has failed to show, by a preponderance of the evidence, that her mental faculties were so impaired by medication when she pleaded guilty that she was incapable of fully understanding and appreciating the charges against her or realizing the consequences of her guilty plea.

**C.    Retroactivity of Laws to be Applied**

Finally, Miller claims that she is entitled to a two-level reduction to her base offense level under "Amendment 782" to the U.S. Sentencing Commission Guidelines Manual (Dkt. No. 6 at 8). In

## MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
## [DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE

response, the government asserts that the Court calculated Miller's base offense level consistent with the two-level reduction set forth in the 2015 Guidelines Manual (Dkt. No. 14 at 8-9).

On April 10, 2014, the United States Sentencing Commission voted to reduce by two levels the base offense levels associated with various drug quantities involved in trafficking offenses, effective November 1, 2014 ("Amendment 782"). As noted above, Miller pleaded guilty on January 21, 2015, to the possession of pseudoephedrine to be used in the manufacturing of methamphetamine, in violation of 21 U.S.C. § 841(c)(2). Pursuant to her plea agreement, the parties stipulated that Miller's total drug relevant conduct was at least 10 grams but less than 40 grams of pseudoephedrine (Dkt. No. 92 at 4). At sentencing, the Court adopted the relevant conduct stipulation and determined, consistent with Amendment 782 and the 2015 Guidelines Manual, that Miller's base offense level was a 24 (Dkt. No. 15-3 at 5-6).[5] Because Miller has already received the benefit of the two-level reduction afforded by Amendment 782, she is entitled to no further reduction of her base offense level.

_____

[5] Even under the current 2018 Guidelines Manual, the base offense level for offenses involving 10-40 grams of pseudoephedrine remains a 24. U.S.S.G. § 2D1.11(d)(8).

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

Further, to the extent that Miller cites <u>United States v.</u>
<u>Pawlak</u>, 822 F.3d 902 (6th Cir. 2016), for the proposition that the
federal Sentencing Guidelines are "unconstitutionally vague "(Dkt.
No. 6 at 8), the Supreme Court of the United States held in <u>Beckles</u>
<u>v. United States</u>, 137 S.Ct. 886, 892 (2017), that the advisory
Guidelines are not subject to a void for vagueness challenge under
the Fifth Amendment Due Process Clause, specifically abrogating
<u>Pawlak</u>.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255
Proceedings, the district court "must issue or deny a certificate
of appealability when it enters a final order adverse to the
applicant" in such cases. If the court denies the certificate, "the
parties may not appeal the denial but may seek a certificate from
the court of appeals under Federal Rule of Appellate Procedure 22."
28 U.S.C. foll. § 2255(a).

The Court finds it inappropriate to issue a certificate of
appealability in this matter because Miller has not made a
"substantial showing of the denial of a constitutional right." <u>See</u>
28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by
demonstrating that reasonable jurists would find that any

23

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION**
**[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

---

assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record, the Court concludes that Miller has failed to make the requisite showing, and **DENIES** a certificate of appealability.

### V. CONCLUSION

In conclusion, for the reasons discussed, the Court **DENIES** Miller's § 2255 motion (Dkt. No. 1), and **DISMISSES** this case **WITH PREJUDICE**. It further **DENIES** Miller's pro se motions for modification of sentence docketed in her criminal case (Case No. 1:14CR86, Dkt. Nos. 183, 184, 194, 195).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to enter a separate judgment order, to transmit copies of both orders to counsel of record and the pro se petitioner, certified mail, return receipt requested, and to strike this case from the Court's active docket.

DATED: July 3, 2019

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE